IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL E. BALLARD,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

No. CIV S-08-1299 DAD

<u>ORDER</u>

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for payment of benefits.

## PROCEDURAL BACKGROUND

        Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act (Act) on July 21, 2005, claiming disability based on difficulty breathing and depression, with an alleged onset date of November 1, 2004. (Transcript (Tr.) at 53-55.) The application was denied initially in November 2005 and upon reconsideration in March 2006. (Tr. at 32-46.) Pursuant to plaintiff's timely request, a hearing was held before an administrative law

judge (ALJ) on August 21, 2007. (Tr. at 47, 273-310.) Plaintiff appeared at the hearing with a non-attorney representative, and it was agreed that plaintiff's onset date should be amended to June 1, 2005. (Tr. at 14.) Plaintiff testified, as did a vocational expert. (Tr. at 273-74.) In a decision dated October 26, 2007, the ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: Chronic Obstructive Pulmonary Disease (COPD), Hepatitis C and lumbar and cervical degenerative disc disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a significant range of light work tasks. He is able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; push/pull in an unlimited fashion; and perform postural activities frequently. He is restricted from climbing ladders, ropes and scaffolding and is to avoid concentrated exposure to cold, humidity, dust, fumes, and other respiratory irritants.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on July 27, 1954 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563)
>
> 8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564)

/////

/////

2

|   |     |                                                                                                                                                                                   |
|---|-----|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   | 9.  | The claimant has a semi-skilled past work background which does not provide any transferable skills to other work.                                                                 |
|   | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(b) and 404.1566). |
|   | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2005 through the date of this decision (20 CFR 404.1520(g)).                    |

(Tr. at 16-23.)

On April 10, 2008, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 4-6, 9.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 9, 2008.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized in the Ninth Circuit as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

/////
/////

# APPLICATION

Plaintiff advances the following three arguments in support of his motion for summary judgment:  (1) the ALJ failed to properly credit the opinions of plaintiff's treating physician, without a legitimate basis for so doing; (2) the ALJ failed to properly evaluate and credit plaintiff's statements regarding the nature and extent of his pain and functional limitations; and (3) the ALJ failed to properly assess plaintiff's residual functional capacity and, as a result, failed to credit the testimony of the vocational expert in response to a hypothetical question that accurately reflected plaintiff's limitations and failed to find plaintiff disabled based on the erroneous application of the grids.  Each argument is addressed below.

## I. Step Four Analysis of Residual Functional Capacity

A claimant's residual functional capacity (RFC) is "the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record."  Id.  See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).  When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record.  20 C.F.R. § 404.1546(c).

In the present case, the ALJ determined the following RFC for plaintiff based on his severe impairments of COPD, hepatitis C, and lumbar and cervical degenerative disc disease:  able to lift/carry 20 pounds occasionally and 10 pounds frequently; able to stand/walk for six hours in an eight-hour day; able to sit for six hours in an eight-hour day; able to push/pull in an unlimited fashion; able to perform postural activities frequently; restricted from climbing ladders, ropes and scaffolding; and required to avoid concentrated exposure to cold, humidity, dust, fumes, and other respiratory irritants.  On the basis of this RFC, the ALJ determined that plaintiff can perform a significant range of light work tasks.  (Tr. at 17-18.)  The ALJ further determined that plaintiff is unable to perform his past relevant work but is able to perform other jobs that exist in significant numbers in the national economy.  (Tr. at 21.)

### A. Opinions of Treating Physician William Klas, M.D.

Plaintiff's first contention is that the ALJ arrived at a flawed RFC determination in part because he failed to properly characterize and discuss the opinions of William Klas, M.D., plaintiff's treating physician.

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, and even an opinion controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. In order to meet the burden of setting forth specific, legitimate reasons for giving less weight to the controverted opinion of a treating physician, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, explain his interpretation of the evidence, and make specific findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). In developing the record and interpreting the evidence, the ALJ must explain why any significant probative evidence has been rejected and must reach a decision supported by substantial evidence. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection

of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original).  See id. at 831-32 (holding that the ALJ's rejection of the opinions of a treating physician and an examining psychologist was not warranted where the rejection was based on a nontreating, nonexamining doctor's opinion supplemented only by unsupported and unwarranted speculation that the treating and examining doctors were misrepresenting the claimant's condition or were not qualified to evaluate it); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence for rejecting the opinions of treating or examining physicians); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that the report of the nontreating, nonexamining doctor, even when combined with the ALJ's own observation of the claimant at the hearing, did not constitute substantial evidence and did not support the ALJ's decision to reject the examining physician's opinion that the claimant was disabled).

    Here, plaintiff argues that the ALJ improperly gave little weight to the opinions of Dr. Klas regarding plaintiff's functional limitations.  The opinions at issue were expressed by Dr. Klas on January 17, 2007, in a form titled "Social Security Disability/SSI Treating Source Statement and Residual Functional Capacity Evaluation (Physical)."  (Tr. at 269-72.)  The form requests that the doctor assist the ALJ in determining the Social Security claimant's ability to do work-related activities on a day-to-day basis in a work setting by assessing the patient's physical capabilities and limitations based upon the doctor's treatment, examination findings, results of laboratory testing, and diagnostic conclusions.  (Tr. at 269.)  The form indicates that the doctor may consider other factors, such as the medical history and the doctor's personal observations, and the doctor may consider complaints of pain, "so long as medical signs and laboratory findings establish the existence of a medical impairment(s) which could reasonably be expected to produce the pain alleged, so long as the patient's complaints are reasonably consistent with the medical signs and laboratory findings present, and so long as you consider the complaints to be credible."  (Id.)

Dr. Klas reported that he had been treating plaintiff for eight and a half months and was seeing him approximately every two months. (Tr. at 269.) Dr. Klas was treating plaintiff for COPD, Hepatitis C, ulcers, depression, and anxiety. Plaintiff's primary diagnosis was COPD, with an onset date of 2004, and his secondary diagnoses were fatigue, Hepatitis C, and cervical and lumbar pain. (Id.) Dr. Klas assessed plaintiff's capabilities and limitations to be as follows: (1) able to stand or walk for a total of 2 to 3 hours in an 8-hour workday, but only for 15 minutes without interruption, based on his COPD and his lumbar pain; (2) able to sit for a total of 7 hours in an 8-hour workday, but only for 30 minutes without interruption, based on the results of his pulmonary function test[1]; (3) not able to sustain an 8-hour work day because he cannot perform sustained effort for more than 15 to 20 minutes without fatigue and shortness of breath; (4) never able to bend, climb, balance, stoop, crouch, crawl, or kneel because such activities exacerbate plaintiff's neck and back pain; (5) able to lift up to 20 pounds occasionally, i.e., less than one third of the time during an 8-hour work day, and never or rarely able to lift more than 20 pounds; (6) able to reach, handle, and finger with both hands or arms occasionally, i.e., less than one third of the time during an 8-hour work day; (7) requires restrictions on dust and fumes because these conditions aggravate his breathing problems; (8) needs to lie down two to four times per day, depending upon his activities; and (9) experiences pain chronically at level 1 and, at worst, at level 10 on a scale of 0 to 10. (Tr. at 270-71.) Dr. Klas was prescribing plaintiff both Lexapro and Combivent inhalers and anticipated gradual deterioration of pulmonary function. (Tr. at 272.) He noted that the more plaintiff does physically, the more rapidly he grows fatigued and short of breath. (Id.)

The ALJ "assign[ed] little weight to Dr. Klas' conclusions as to such a significant lack of capacity to engage in work activities as such conclusions are not supported by objective

---

[1] Spirometry was performed at Marshall Medical Center on May 16, 2006, by David Webb, M.D. (Tr. at 253.) The record reflects that the test results and report were sent to Dr. Klas. (Id.)

8

findings, but rather draw inferences from the claimant's history and subjective complaints." (Tr. at 20.) The ALJ offered no analysis or discussion in support of this determination.

The court has scrutinized Dr. Klas's evaluation for any indication that the doctor merely drew inferences from plaintiff's history and subjective complaints, instead of relying on objective findings. As noted supra, the RFC evaluation form instructs the doctor to assess the patient's physical capabilities and limitations based upon the doctor's treatment and examination findings, results of laboratory testing, and diagnostic conclusions. (Tr. at 269.) The form permits the doctor to consider medical history and personal observations, and complaints of pain may also be considered as long as medical signs and laboratory findings establish the existence of medical impairments that could reasonably be expected to produce the pain alleged, the patient's complaints of pain are reasonably consistent with medical signs and laboratory findings, and the doctor considers the complaints to be credible. (Id.) Additional instructions on the second page of the form require the doctor to "[i]dentify the particular medical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, symptoms (including pain), etc. which support your assessment of any limitations," with a warning in capital letters that the usefulness of the doctor's assessment depends on the extent to which he complies with this instruction. (Tr. at 270 (emphasis added).)

The evaluation form completed by Dr. Klas does in fact identify medical findings in support of each limitation found, ranging from diagnostic conclusions and results of laboratory tests to observations and symptoms of pain. (Tr. at 270-71.) The ALJ did not demonstrate that any particular limitation found by Dr. Klas was based on a mere inference drawn from plaintiff's history and subjective complaints rather than a limitation properly supported by the medical findings or symptoms that could reasonably be expected to arise from the diagnosed impairments, were reasonably consistent with the medical signs and laboratory findings, and were found to be credible by Dr. Klas.

/////

1    In contrast to the ALJ's assertion that Dr. Klas's conclusions are not supported by
2 objective findings, the ALJ found the opinion of Dr. Seu, a physician who examined plaintiff on
3 November 3, 2005, "persuasive, consistent with the record and well-supported by objective
4 findings." (Tr. at 20.) The ALJ accorded Dr. Seu's opinion "significant weight." (Id.) The ALJ
5 also accorded "significant weight" to state agency physicians' opinions dated November 21,
6 2005, and March 2, 2006, noting in particular "the consistency of these assessments with the
7 longitudinal record." (Id.) The court considers each of these opinions in turn.

8    Philip Seu, M.D., a board-certified surgeon, performed a comprehensive internal
9 medicine evaluation of plaintiff on November 3, 2005. (Tr. at 180-82.) No medical records were
10 available for his review, and he appears to have been unaware of plaintiff's diagnoses of hepatitis
11 C and lumbar and cervical degenerative disc disease. (Tr. at 180.) He observed that plaintiff had
12 some difficulty with movement, coughed "a fair amount," and had positive wheezing in the base
13 of his right lung, as well as clubbing of the fingernails, both a sign of COPD. (Tr. at 181-82.)
14 Dr. Seu diagnosed COPD and concluded that the condition is symptomatic and limits plaintiff's
15 activity. (Tr. at 182.) He opined that plaintiff "could be expected" to stand and walk for six
16 hours in an eight-hour workday "with more frequent breaks," sit without limitations in an eight-
17 hour workday, and lift and carry 20 pounds occasionally and 10 pounds frequently, with no
18 postural, manipulative, or environmental limitations. (Id.) A pulmonary function test (PFT)
19 study was obtained on November 3, 2005. (Tr. at 184-200.) Deepak Shrivastava, M.D., who
20 interpreted the PFT study, found moderate obstructive airway disease based on a low FEV1 (56%
21 of predicted pre-bronchodilator forced expiratory volume) and low flow rate, with no significant
22 improvement noted on bronchodilator use. (Tr. at 184.)

23    Less than three weeks after Dr. Seu's evaluation of plaintiff, non-treating, non-
24 examining state agency physician C.R. Dann completed a Physical Residual Functional Capacity
25 Assessment form. (Tr. at 202-09.) Citing plaintiff's diagnosis of hepatitis C, the positive
26 wheezing at his right lung base, and the PFT study results, Dr. Dann opined, generally in accord

with Dr. Seu's opinion, that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk with normal breaks for about 6 hours in an 8-hour workday, could sit with normal breaks for about 6 hours in an 8-hour workday, and had an unlimited ability to push and/or pull. (Tr. at 203.) Dr. Dann did not adopt Dr. Seu's opinion that plaintiff would need more frequent breaks in order to stand and/or walk for six hours in a workday. (Tr. at 203.) Dr. Dann also departed from Dr. Seu's conclusions by adding postural and environmental limitations, opining that plaintiff should be limited to occasional climbing and should avoid extreme cold, humidity, and fumes, odors and dust. (Tr. at 204, 206.) After plaintiff requested reconsideration of the denial of his application for disability benefits, a state agency physician whose signature is illegible reviewed the record on March 2, 2006, and affirmed Dr. Dann's November 21, 2005 opinion. (Tr. at 211-12.) The ALJ's determination of plaintiff's RFC is identical to those of the state agency physicians in every detail. (Tr. at 17-18.)

The court finds that the ALJ's characterization of the state agency physicians' opinions as "longitudinal" is not supported by substantial evidence in the record. The three opinions were rendered over a four-month period from November 3, 2005 to March 2, 2006. No medical records were provided to Dr. Seu, and the only evidence that the state agency physician who completed an RFC form on November 21, 2005 considered any evidence other than Dr. Seu's opinion is the acknowledgment of plaintiff's Hepatitis C diagnosis and the notations that plaintiff was not suffering end stage organ damage and that there was no evidence regarding plaintiff's alleged back impairment. (Tr. at 202-03, 207.)

The record includes the treatment records of Dr. Culver, who was plaintiff's treating physician in 2004 and 2005, and at least some of the treatment records from Marshall Medical Center, where plaintiff was treated from 1994 through 2005. (Tr. at 139-78.) Dr. Culver had diagnosed severe COPD and backaches on May 2, 2004, and pulmonary function testing conducted on May 20, 2004, confirmed the diagnosis of COPD. (Tr. at 173, 147.) Dr. Culver also assessed hepatitis C on July 14, 2005, after plaintiff was diagnosed while donating

blood at a blood bank. (Tr. at 167.) The medical opinions relied upon by the ALJ as "consistent with the longitudinal record" do not address any of these pre-2006 medical records, despite the fact that when Dr. Seu and the state agency physicians considered plaintiff's impairments, the alleged disability onset date was November 1, 2004.

At the other end of the longitudinal spectrum for this case, the three opinions relied upon by the ALJ were prepared prior to the submission of additional documentation from Marshall Medical Center and prior to Dr. Klas's evaluation of plaintiff's RFC, based on plaintiff's condition in January 2007, more than a year after Dr. Seu's one-time examination and Dr. Dann's review of the records. (Tr. at 239-63, 269-72.) Significantly, the treatment records from Marshall Medical Center include results of additional breathing tests administered on May 16, 2006, showing moderate air flow obstruction with borderline restriction, lung volumes showing mild air trapping, and diffusion capacity mildly to moderately decreased "consistent with some emphysema." (Tr. at 253.)

The treating records and laboratory results spanning the entire period from 2004 to 2007 support Dr. Klas's opinions. The court finds that the ALJ improperly rejected Dr. Klas's opinions when he concluded that they were not supported by the record and consisted solely of inferences drawn from plaintiff's history and subjective complaints. The ALJ's stated reasons for rejecting the treating physician's opinion are neither clear and convincing nor specific and legitimate. While the opinions relied upon by the ALJ are consistent with each other, they reflect a small part of the record and do not contradict the opinions of a treating physician rendered more than a year later on the basis of the ongoing treatment of plaintiff as well as plaintiff's medical history and symptoms.

In sum, the court finds that the ALJ failed to give proper credit to the opinions of plaintiff's treating physician and improperly rejected those opinions in favor of the opinions of a physician who examined plaintiff once, without having an opportunity to review any medical records, and the opinions of two non-treating, non-examining physicians who relied on the

opinions of the examining physician. Plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly credit the opinions of his treating physician.

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff argues next that the ALJ failed to properly evaluate and credit plaintiff's own statements regarding the nature and extent of his pain and his functional limitations.

It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281). In evaluating a claimant's subjective testimony regarding pain and the severity of his symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. Absent affirmative evidence of malingering, however, the reasons for rejecting a claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. Determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair, 885 F.2d at 604 n.5.

In the present case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged by plaintiff but

determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely credible." (Tr. at 19.) The ALJ's explanation for this conclusion begins with a summary of plaintiff's testimony that exaggerates plaintiff's functional abilities, in part because of the failure to credit Dr. Klas's opinions, and then continues as follows:

> The evidence does show that after many years of smoking, the claimant has developed problems with shortness of breath typical of COPD. He has, however, been able to pass special breathing tests showing that his breathing capacity is good or satisfactory and chest x-rays noted no evidence of acute cardiopulmonary difficulties. The claimant controls his condition by the use of inhalers and does not give himself nebulizer treatments. Furthermore, he does not routinely require emergency intervention for breathing difficulties. The claimant very recently did quit smoking and testified that he did not notice any difference as yet in his breathing. After donating blood in 2005, the claimant was notified that he was positive for Hepatitis C. Although he does experience some fatigue and his condition is chronic, practitioners noted that laboratory tests showed only mild inflammation of the liver. Similarly, radiological studies of the cervical and lumbar spine show only the early stages of degenerative disc disease. Despite moving a little slow, the claimant is able to live on his own and does his laundry, shopping, cleaning and some yard work. The undersigned notes that the claimant spoke well at the hearing and did not show signs of shortness of breath or wheezing.

(Id.)

The ALJ's discussion on this issue misses the mark in many ways. First, the ALJ did not include citations to exhibits, and the court has not found any medical records of "special breathing tests" that characterize plaintiff's breathing capacity as good or satisfactory. (See tr. at 147, 184, 253.) In contrast to the ALJ's assertions, plaintiff testified that he does not do yard work, (tr. at 295, 299), explained that his doctors told him that quitting smoking would not cause his breathing to improve but would keep his lungs from getting worse as fast as they would if he continued to smoke (tr. at 289), and had to stop seeing Dr. Klas because he had no insurance and did not have the money to pay for his services (tr. at 286-88).

/////

14

Moreover, the ALJ appears to have stepped into the role of physician in determining that plaintiff's testimony about the severity of his symptoms was not credible because plaintiff did not have acute cardiopulmonary difficulties, had not been prescribed a nebulizer, did not go to an emergency room regularly, and did not wheeze or appear short of breath during the hearing. In fact, plaintiff stated during the hearing that he was experiencing shortness of breath and was having difficulty breathing. (Tr. at 293.)

With respect to plaintiff's daily activities, it is well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). The court finds that the activities described by plaintiff in his testimony at the administrative hearing do not detract from his credibility as to the intensity, persistence, and limiting effects of his symptoms.

The ALJ also supported his rejection of plaintiff's subjective testimony with an assertion that "[t]he objective and opinion evidence has shown only mild to occasionally moderate impairment" associated with plaintiff's severe impairments. (Tr. at 19.) The ALJ's discussion of this assertion includes his erroneous rejection of Dr. Klas's opinion in favor of the opinions of the examining and reviewing physicians, as discussed supra. This discussion is tantamount to an improper rejection of plaintiff's testimony on the ground that his symptoms are unsupported by objective medical evidence.

There is no evidence of malingering in this case, and the ALJ did not offer any clear and convincing reason for finding plaintiff's testimony "not entirely credible." In addition,

plaintiff's testimony is consistent with the limitations described in the treating physician's evaluation.  For these reasons, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly evaluate and credit his testimony regarding the nature and extent of his pain and functional limitations.

## II. Step Five Determination

Plaintiff's final argument is that the ALJ failed to properly assess his RFC and, as a result, failed to credit the testimony of the vocational expert (VE) in response to a hypothetical question that accurately reflected plaintiff's limitations.  Plaintiff contends that the ALJ should have found him disabled based on the medical-vocational guidelines.

Above, the court has found that the ALJ failed to properly credit the opinions of plaintiff's treating physician and failed to properly credit plaintiff's own statements regarding his subjective symptoms and functional limitations.  As a result, the ALJ's assessment of plaintiff's RFC was not properly based on all relevant evidence in the record, and the ALJ reached a flawed conclusion about plaintiff's ability to perform a significant range of light work.

When Dr. Klas's opinions and plaintiff's testimony are credited, plaintiff's RFC is as follows:  he is able to lift and carry up to 20 pounds occasionally; he is able to stand and/or walk for 2 to 3 hours in an 8-hour workday, but only for 15 minutes at a time; he is able to sit for 7 hours in an 8-hour workday, but only for 30 minutes at a time; he cannot bend, climb, balance, stoop, crouch, crawl, or kneel; he requires restrictions on dust and fumes; he experiences pain chronically at a level that ranges from 1 to 10 on a scale of 0 to 10; he needs to lie down 2 to 4 times per day; he is not able to sustain an 8-hour work day because he cannot perform sustained effort for more than 15 to 20 minutes without fatigue and shortness of breath.  (Tr. at 270-72.)

The ALJ's first hypothetical question posed to the vocational expert (VE) was based on an RFC that did not include the restrictions assessed by Dr. Klas.  (Tr. at 304.)  The VE testified in response to the flawed hypothetical question that plaintiff can perform "literally hundreds of light jobs."  (Id.)  However, that testimony has no evidentiary value.  See Embrey v.

1  Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("If the assumptions in the hypothetical are not
2  supported by the record, the opinion of the vocational expert that claimant has a residual working
3  capacity has no evidentiary value.") (quoting Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.
4  1984)).

5         The ALJ asked a second hypothetical question of the VE that incorporated
6  important elements of the RFC determined by Dr. Klas, i.e., that plaintiff can stand 2 to 3 hours
7  without interruption for up to 15 minutes; can sit without interruption for 30 minutes, not to
8  exceed 7 hours in an 8-hour period; can work for 15 to 20 minutes and then would experience
9  some fatigue if the work required exertion and would have to rest; can bend, climb, balance,
10 stoop, crouch, and crawl occasionally; can lift up to 20 pounds occasionally; can reach, handle,
11 and finger occasionally; should avoid concentrated exposure to dust and fumes; and should have
12 a chance to lie down during the day. (Tr. at 305-07.)

13        In response to that second hypothetical question, the VE testified that such an
14 individual would be qualified only for sedentary work, would have to have a sit/stand option, and
15 would be limited to jobs with minimal reaching, handling, and grasping, which are activities
16 required for most sedentary jobs. (Tr. at 307-08.) Although the VE testified that there were
17 some jobs that might meet those requirements, the need for a chance to lie down was an issue
18 because "there's no job out there where he's going to be able to go and lay down. Unless he
19 went to his car, you know." (Tr. at 308.) The VE testified further that a work break is generally
20 for 10 to 15 minutes, and then the individual would need to be at work again for two hours after
21 such a break. (Id.) The VE expressed skepticism as to whether the person would meet "a basic
22 requirement of being employed." (Id.) In response to questioning by plaintiff's attorney, the VE
23 confirmed that the individual described in the second hypothetical question would be working at
24 a sedentary level of work activity and that none of plaintiff's past work would provide
25 transferable skills to any sedentary job. (Tr. at 309-10.)
26 /////

At the fifth step of the sequential evaluation process, the Commissioner may satisfy his burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by applying the Medical-Vocational Guidelines, if appropriate, or by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988). "The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical vocational factors, i.e., age, education, and work experience, in combination with the individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids may be utilized when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998). "When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Svcs., 846 F.2d 573, 577 (9th Cir. 1988)). See also Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (holding that an ALJ may rely solely on the Medical-Vocational Guidelines, i.e., "the grids," only when a claimant can perform the full range of applicable work). Moreover, pain has been recognized as a non-exertional limitation which may make reliance on the grids inappropriate. See Rollins v. Massanari, 261 F.3d 853, 863, n.7 (9th Cir. 2001); Desrosiers, 846 F.2d at 577; see also Reddick, 157 F.3d at 729; Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993). The same is true of severe manipulative limitations which may limit a claimant's functional capacity in ways not contemplated by the grids. See Bray v. Commissioner, 554 F.3d 1219, 1231 n.7 (9th Cir. 2009); Lounsbury v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006); see also 20 C.F.R. § 404.1569.

/////

In this case, the nonexertional limitations arising from plaintiff's severe impairments, are sufficiently severe that they significantly limit the range of any work that might otherwise be permitted by plaintiff's exertional limitations. Plaintiff argues correctly that Medical-Vocational Rule 201.14 directs a finding of disabled for a claimant who is limited to sedentary work, has plaintiff's age and education level with the kind of past relevant work history that plaintiff has, and has no transferable skills.

The court finds that, whether the ALJ were to apply Rule 201.14 or rely on the VE's testimony in response to his second hypothetical question, the outcome would be the same. There are no jobs in the national economy that plaintiff can perform given his limitations. The court finds that plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly assess his RFC and failed to credit the testimony of the VE in response to a hypothetical question that reflected plaintiff's limitations relatively accurately.

**CONCLUSION**

As a result of the ALJ's errors in determining plaintiff's RFC, the final decision in this case is not supported by substantial evidence in the record.

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, it is plain that no useful purpose would be served by further administrative proceedings. Plaintiff filed his application for disability insurance benefits more than four years

ago. The vocational expert's answer to the ALJ's second hypothetical question affirmatively establishes that plaintiff was unable to perform a significant number of jobs in the national economy at the relevant time. Had the ALJ based his decision on the vocational expert's testimony in response to the second hypothetical question, the ALJ would have found plaintiff disabled as of the alleged onset date. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007) (finding the claimant entitled to benefits where he needed to lie down two or three times each day for up to 45 minutes due to pain and where the vocational expert testified that there were no jobs available in the national economy in light of that limitation).

Accordingly, this case will be remanded with the direction to award benefits on the ground that plaintiff was under a disability as defined by the Social Security Act. See Moore v. Comm'r of Soc. Sec. Admin, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

IT IS ORDERED that:

1. Plaintiff's January 26, 2009 motion for summary judgment (Doc. No. 18) is granted;

2. Defendant's March 8, 2009 cross-motion for summary judgment (Doc. No. 19) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for payment of benefits.

DATED: September 22, 2009.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/ballard1299.order